The Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | CASE NO.  MJ23-447 |
|---|---|
| Plaintiff, | |
| | COMPLAINT for VIOLATION |
| v. | 18 U.S.C. § 922(g)(1) |
| SANXAY XAYADETH, | 21 U.S.C. § 841 (a)(1), 841(b)(1)(B) |
| Defendant. | |

BEFORE United States Magistrate Judge Brian A. Tsuchida United States Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (Unlawful Possession of a Firearm)

On or about September 6, 2023, in King County, within the Western District of Washington, SANXAY XAYADETH, knowing that he had been convicted of the following crimes punishable by imprisonment for a term exceeding one year, to wit:

   a.  *Possession of a firearm*, under case number 021068835, in King County
       Superior Court, Washington, on or about December 12, 2002;

Complaint - 1
*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b.   *Rape in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

c.   *Burglary in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

d.   *Robbery in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

e.   *Conspiracy to Sell Controlled Substances*, in the Western District of Washington, under case number 2:05-CR-00317-JLR on or about March 28, 2007;

f.   *Unlawful Possession of Stolen Firearms*, under case number 2:15-CR-00240-JLR, in the Western District of Washington, on or about March 21, 2016;

did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is: a Glock Model 19 serial number: BNYT212, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT 2

### (Possession of a Controlled Substance with Intent to Distribute)

On or about September 6, 2023, in King County, within the Western District of Washington, and elsewhere, SANXAY XAYADETH did knowingly and intentionally possess with the intent to distribute, a controlled substance, including: cocaine, N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide (fentanyl), a Schedule II substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 40 grams or more of a mixture or substance containing a detectable amount of fentanyl.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B).

Complaint - 2

*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Affiant Background

1.     I am currently a special agent for Homeland Security Investigations (HSI) and attended the Federal Law Enforcement Training Centers for approximately six months where I attended and was certified by the Criminal Investigation Training Program (CITP) and certified by the Homeland Security Investigation Special Agent Training Program (HSISAT) to be a special agent. As a special agent, I conduct criminal investigations on individuals who commit crimes against the United States, with a specialty in crimes committed involving a transnational nexus. Prior to working for HSI, I worked as a Police Officer for the United States Secret Service as a Patrol Officer. While working as a Police Officer, I made several arrests for crimes against the District of Columbia to include drug charges, assault charges, and Driving Under the Influence (DUI). To become a Police Officer for the United States Secret Service I attended the Federal Law Enforcement Training Center's Uniformed Police Training Program, and the United States Secret Service Uniformed Police Training Program.

2.     As a federal law enforcement officer, I have received formal training, as well as extensive on-the-job training, in the investigation of narcotics trafficking. I have conducted and participated in investigations involving controlled substances, money laundering, and other criminal activity such as weapons trafficking, including those leading to arrest and prosecution. As a result of these investigations, I have become familiar with methods and techniques used by narcotics manufacturers and distributors, persons in possession of narcotics for purposes of sales and transportation, and persons conspiring to transport and sell narcotics. I am also familiar with the methods employed by narcotics traffickers to conceal their trafficking activity and the origin of proceeds generated by this activity. I am aware that traffickers use slang and coded words, multiple cell phones, concealed compartments, "stash" houses to conceal their activities, and launder or otherwise conceal cash proceeds by hiding and transporting bulk cash, sending funds through wire transfers or bank accounts in other persons' names, or

Complaint - 3

*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investing in assets placed in other persons' names. I have also worked and consulted with numerous law enforcement officers experienced in narcotics and money laundering investigations. As a result, I am familiar with how money launderers and drug traffickers speak to each other and generally conduct business. For example, I am aware that money launderers and drug traffickers discussing criminal matters over the phone often speak in code or in vague terms. I am also aware that these subjects frequently (1) provide false subscriber information to the service providers, (2) use phones which are subscribed under identities other than their own, and (3) change phones in order to avoid detection by law enforcement.

3. Because this complaint is submitted for the limited purpose of determining whether there is probable cause to support the charge contained herein, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. The recitation of facts below does not include everything known to me about this investigation, this crime, or this Defendant. I have only included sufficient facts necessary to establish probable cause that these Defendants committed the crimes charged in this Complaint. Significant additional details have been omitted for the sake of brevity. Where I have included statements of others, they are set forth in substance and in part, and are not direct quotations.

## SUMMARY OF PROBABLE CAUSE

Confidential Informant

Complaint - 4
*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.     The confidential informant (CI) utilized in this investigation has provided reliable information over the course of the last fourteen years to several Seattle Police Narcotics detectives. CI is being paid for his/her efforts in this investigation. CI has been associated with narcotic traffickers for more than fourteen years and has used and sold drugs and therefore, he/she is familiar with the buying and selling of narcotics, including the price and appearance of various controlled substances. To my knowledge, CI has never given law enforcement false information, and the information he/she has provided to Detective Lazarou has proved to be true, some examples of which are outlined herein.

6.     The CI has prior criminal history, which includes one felony conviction for violations of the controlled substances act (VUCSA) and several misdemeanors for driving offenses and narcotics paraphernalia. The CI has no convictions for crimes of dishonesty. The CI's identity is known to Detective Lazarou; however, Detective Lazarou is not divulging their identity in this Complaint because to do so would create a real and significant risk to their physical safety and the safety of their family. If their cooperation were known to the target and the larger Drug Trafficking Organization, it would create a significant and immediate risk of physical harm.

Initial Investigation

7.     In June 2023, Seattle Police Narcotics Detective Spaulding and Detective Lazarou were contacted by the above-described confidential informant who stated he/she knew of a drug trafficker that distributes fentanyl, heroin, and methamphetamines throughout King County.  The CI said she/he knows the drug trafficker only by the name Si and described him as an Asian male in his 50s approximately 5'3" with a medium build.  The CI provided Detective Lazarou with Si's cellular phone which is 425-891-1286. The CI said they believe Si lives in the Bellevue area, drives a silver-colored Ford truck, and has heard he is a sex offender.  The CI agreed to conduct controlled narcotics buys from Si soon.

Complaint - 5
*United States v. Sanxay Xayadeth*

8.    Detective Lazarou conducted a check of the listed cellular phone. And through law enforcement databases discovered a sexual offender named Sanxay H. XAYADETH (DOB: 05-05-71). Next, Detective Lazarou obtained a Washington State Department of License (DOL) photo of XAYADETH and showed it to the CI. The CI confirmed that the subject was XAYADETH, but said he currently does not have facial hair like in his DOL photo.

9.    Detective Lazarou then conducted database checks of XAYADETH. He learned XAYADETH has a Washington Department of Licensing (DOL) address of 12621 NE 130th Way Apt D107 Kirkland WA and that his sexual offender registration address is 607 154th Ave SE Bellevue WA (hereinafter, the "Bellevue residence").

Controlled Buy 1

10.    During the first half of August 2023, on a date and time known to Detective Lazarou, but not further disclosed here to protect the CI's identity, detectives set up a meeting with the CI to conduct a controlled buy from XAYADETH.

11.    Detective Spaulding and Detective Lazarou met with the CI and asked her/him to make a phone call to XAYADETH in their presence.  The CI agreed to make the call and used the phone number that she/he had previously provided detectives.  The phone rang and was answered by a male.  The CI indicated she/he recognized the person who answered the phone as XAYADETH. The CI agreed to meet XAYADETH at a predetermined meeting location in King County, WA.

12.    Detective Spaulding and Detective Lazarou searched the CI and her/his property for narcotics, paraphernalia, currency, and weapons.  The CI was free from the listed items.  The CI was given pre-recorded buy money and was instructed to complete a drug deal with XAYADETH.

13.    Prior to the meeting time occurring, Detective Lazarou had several SPD narcotics detectives go to the meet location to monitor the controlled buy and provided them with a picture of XAYADETH.

Complaint - 6
*United States v. Sanxay Xayadeth*

14.    Detective Spaulding and Detective Lazarou followed the CI to the pre-determined meet location where she/he was going to meet XAYADETH. While the CI traveled to the pre-determined meet location, she/he did not stop or contact anyone and was under constant observation by detectives.

15.    Seattle Police Narcotics Detective Chan observed a Honda arrive at the meet location and travel to the CI. Detective Chan advised the vehicle was occupied only by the driver. Detective Chan stated the driver of the vehicle exited the vehicle and Detective Chan was able to positively identify him as XAYADETH. Detective Chan said XAYADETH and the CI made contact and after several minutes they both entered their own vehicles and went their separate ways.

16.    After the controlled buy, the CI traveled to another pre-determined, de-brief location, where she/he met with Detective Spaulding and Detective Lazarou. While traveling to this location, she/he traveled directly there and did not stop or contact anyone.

17.    Once at the meeting location, the CI stated she/he met with XAYADETH who is the person that she/he previously described and talked to on the phone. The CI stated he/she completed the transaction for the fentanyl. The CI handed over a plastic baggie that contained the fentanyl purchased during the control buy. The amount is consistent with the pre-recorded buy money she/he gave XAYADETH. Detective Spaulding and Detective Lazarou searched the CI and her/his property again for narcotics, paraphernalia, currency, and weapons. The CI was again free from the listed items.

18.    After the control buy occurred, SPD Narcotics detectives continued to surveil XAYADETH as he was driving the Honda. XAYADETH and his vehicle were followed over to Bellevue. XAYADETH parked his vehicle in the driveway of the Bellevue residence. Detective Spaulding and Detective Lazarou observed XAYADETH still seated in the driver's seat of the listed Honda. After several minutes XAYADETH

Complaint - 7
*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

was observed exiting the driver's seat and entering the Bellevue residence. Also parked on the street in front of the residence was a silver Ford truck, bearing Washington State license plates D49837C (hereinafter, the "Ford truck"). The CI had mentioned XAYADETH drives a Ford truck. SPD detectives conducted database checks of the listed Ford truck and determined the registered and legal owner of the truck is XAYADETH. The Honda XAYADETH was driving was registered to a different individual, but the address on the registration was 12621 NE 130th Way D107 Kirkland WA—the address on XAYADETH's DOL license.

19.    Detective Spaulding and Detective Lazarou transported the suspected fentanyl to the Seattle Police evidence unit, where detectives weighed it and obtained a presumptive positive field test for fentanyl.

Continued Surveillance of the Bellevue Residence

20.    Over the course of several days after the listed control buy, Detective Chin stopped by the listed location. Detective Chin noted several vehicle license plates always parked at the listed location which included the Honda from controlled buy #1 along with XAYADETH's Ford truck. On one morning, Detective Chin observed XAYADETH seated inside a black colored Honda Accord but was unable to observe the license plate.

Controlled Buy 2

21.    During the second half of August 2023, on a date and time known to Detective Lazarou but not further disclosed here to protect the CI's identity, detectives set up a meeting with the CI to conduct a controlled buy from XAYADETH.

22.    Detective Spaulding and Detective Lazarou met with the CI and asked her/him to make a phone call to XAYADETH in their presence. The CI agreed to make the call and used the phone number that she/he had previously provided detectives, 425-667-3093. The phone rang and was answered by a male. The CI indicated she/he recognized the person who answered the phone as XAYADETH. The CI agreed to meet XAYADETH at a predetermined meeting location in King County, WA.

Complaint - 8

*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     Detective Spaulding and Detective Lazarou searched the CI and her/his property for narcotics, paraphernalia, currency, and weapons. The CI was free from the listed items. The CI was given pre-recorded buy money and was instructed to complete a drug deal with XAYADETH. Detective Spaulding and Detective Lazarou followed the CI to the pre-determined meet location where she/he was going to meet XAYADETH. While the CI traveled to the pre-determined meet location, she/he did not stop or contact anyone and was under constant observation by detectives.

24.     Prior to the meeting time, Detective Lazarou had several SPD narcotics detectives at the Bellevue residence to conduct surveillance. Approximately 20 minutes after the CI called XAYADETH, SPD Detective Chin advised he observed XAYADETH exit the side gate next to the garage which accesses the property. Detective Chin said he observed XAYADETH enter the driver's seat of a black colored Honda Accord, which matched the vehicle he observed XAYADETH seated in on a previous surveillance day. Records checks of this vehicle shows XAYADETH to be the registered and legal owner. After a few minutes, Detective Chin advised he observed XAYADETH exit the Honda and walk over to the Ford truck, which was parked on the street in front of the listed residence. Detective Chin stated XAYADETH removed a green bag from within the Ford truck and then walked back to the Honda and again sat back in the driver's seat with the green bag. Several minutes later, Detective Chin watched the Honda back out of the driveway with XAYADETH being the only occupant of the vehicle. Seattle police narcotics detectives and HSI agents followed XAYADETH and his Honda directly to the meet location.

25.     Once XAYADETH arrived at the meet location, Detective Spaulding advised that XAYADETH parked his Honda near the CI. Detective Spaulding stated he observed the CI exit her/his vehicle and enter XAYADETH's Honda. After several minutes, Detective Spaulding saw the CI exit the Honda and both vehicles drive away from the meeting location.

Complaint - 9
*United States v. Sanxay Xayadeth*

26.    After the controlled buy, the CI traveled to another pre-determined de-brief location where she/he met with Detective Spaulding and Detective Lazarou. While traveling to this location, she/he traveled directly there and did not stop or contact anyone.

27.    Once at the meeting location, the CI stated she/he met with XAYADETH who is the person that she/he previously described and talked to on the phone. The CI stated she/he completed the transaction for the fentanyl.  The CI handed over a plastic baggie that contained the fentanyl purchased during the controlled buy. The amount is consistent with the pre-recorded buy money she/he gave XAYADETH.  The CI stated XAYADETH had the amount of fentanyl ready but that a green bag was nearby and suspected more narcotics to be inside of the bag. Detective Spaulding and Detective Lazarou searched the CI and her/his property again for narcotics, paraphernalia, currency, and weapons. The CI was again free from the listed items. The CI was released.

28.    On August 31, 2023, Detective Lazarou discussed XAYADETH with HSI agents. This is when I subsequently learned of his above-detailed investigation of XAYADETH.

29.    I subsequently queried the National Crime Information Center (NCIC) and learned that XAYADETH is currently on a probationary status within the Western District of Washington pursuant to his federal convictions.  I also reviewed NCIC records related to XAYADETH's previous arrests and convictions and learned that he has felony convictions punishable by imprisonment for a term exceeding one year, which would federally prohibit him from possessing firearms. These convictions include:

   a. *Possession of a firearm*, under case number 021068835, in King County Superior Court, Washington, on or about December 12, 2002;

   b. *Rape in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

Complaint - 10

*United States v. Sanxay Xayadeth*

c. *Burglary in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

d. *Robbery in the First Degree*, under case number 930332160, in Multnomah County Circuit Court, Oregon, on or about August 30, 1993;

e. *Conspiracy to sell controlled substances*, in the Western District of Washington, under case number 2:05-CR-00317-JLR on or about March 28, 2007;

f. *Unlawful Possession of Stolen Firearms*, under case number 2:15-CR-00240-JLR, in the Western District of Washington, on or about March 21, 2016;

30.     A review of the Judgment in case number 2:05-CR-00317-JLR reflects that the Court sentenced XAYADETH to 125 months imprisonment.

31.     A review of the Judgment in case number 2:15-CR-00240-JLR reflects that the Court sentenced XAYADETH 94 months imprisonment.

32.     On September 1, 2023, Detective Lazarou requested a search warrant before the Honorable Sandra Widlan of the King County Superior Court. Probable Cause was found in the application (SW#23-0-62421-4) and the judge authorized a search warrant for XAYADETH's residence, 607 154th Ave SE Bellevue, WA (the Bellevue residence). In addition, XAYADETH's three vehicles were also included in the search warrant to include the Ford truck, and both Honda accords observed by SPD detectives.

Search Warrants, Seizure of Narcotics and Firearm, Arrest of XAYADETH

33.     On September 6, 2023, at approximately 9:30 AM, special agents from HSI and detectives from SPD initiated surveillance on the target residence and waited for XAYADETH to leave his residence.

34.     At approximately 1:40 PM a detective from SPD recognized XAYADETH as he exited the Bellevue residence and entered the ford Truck.

35.     Special agents and SPD detectives followed the ford Truck as it left the residence and went to a gas station, located at 15615 NE 8th St Bellevue, WA.

Complaint - 11

*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

XAYADETH was seen entering the gas station, upon exiting the gas station, SA Fusco, SA Ryan, and I detained XAYADETH without incident.

36. Special agents and SPD detectives searched the Ford truck pursuant to the search warrant listed above. In the ford Truck, a black bag was located in the rear of the vehicle. Inside of the black bag were several small bags containing what appeared to be narcotics. The following items were located inside the black bag by SPD Detective Dittoe:

- One 38 special round
- Sixteen 22 caliber rounds
- 92.6 grams of blue M30 fentanyl pills
- 5.2 grams of white fentanyl powder
- 15.7 grams of fentanyl chunks (multiple small packages)
- 10.9 grams of cocaine

37. All of the above-referenced drugs were field tested by investigators using standard field testing equipment and tested positive for the presence of the listed drugs. Based on my training and experience, I know that having a bulk sum of the same drug (fentanyl) broken up into multiple small packages is consistent with packaging for sale. Additionally, the above quantities of fentanyl, combined with the multiple forms of the same drug (fentanyl in pills, powder, and shards) is inconsistent with a mere user of drugs.

38. In the rear pocket of the front passenger seat of the Ford truck the following was located:

- Three 38 special rounds

39. In the front passenger door of the Target Vehicle the following was located:

- One 22 caliber round

40. Following XAYADETH's arrest, SPD Detective Pete Lazarou spoke with him. Detective Lazarou subsequently advised me of the following:

Complaint - 12
United States v. Sanxay Xayadeth

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.    Detective Lazarou advised XAYADETH of his *Miranda* rights, which XAYADETH acknowledged. Following the *Miranda* advisement, Detective Lazarou and XAYADETH talked about the items agents discovered during the searches of his vehicle and home.  These discussions occurred at the scene of his arrest, during prisoner transport, and outside of XAYADETH's residence during the search.  Some of XAYADETH's statements are summarized below.  Because the discussion took place in several parts, they are summarized below in general terms and placed in a logical order for clarity; these are not verbatim statements.

42.    XAYADETH initially denied that he had anything illegal in the car.

43.    However once investigators discovered the fentanyl pills, XAYADETH acknowledged they were his.

44.    During his exchange with Detective Lazarou, XAYADETH also acknowledged that he lived in a bedroom in the basement of the Bellevue home.

45.    After investigators began to search his residence, XAYADETH admitted to Detective Lazarou that he had a gun under his bed.  XAYADETH stated that an individual he identified as "Chino" had given him the gun to hold onto in exchange for approximately $150 to $200.  The following day, "Chino" was going to tell XAYADETH where he (XAYADETH) should drop the gun off.  During the course of XAYADETH's admissions that he possessed the gun, he told Detective Lazarou that he knew he was prohibited from having a firearm.  XAYADETH stated that the gun under his bed had a magazine loaded with bullets, but did not have a bullet in the chamber.

46.    Special agents determined based off the suspected narcotics, and ammunition located in the vehicle, that XAYADETH should be taken into custody, and XAYADETH was formally placed under arrest.

47.    Special agents and SPD detectives then went to a staging location to brief the upcoming search of the target residence.

Complaint - 13
*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.    At approximately 3:00 PM, special agents and SPD detectives conducted a knock and announce at the residence. No one answered. SAs and detectives then made entry into the residence where SA Restad contacted a female occupant, who was determined to be an associated renter of one of the upper bedrooms within the residence, and then released. No one else was located within the residence.

49.    Once the house was clear of occupants, SAs and detectives started a search, pursuant to the above listed search warrant. In the basement level of the residence, SAs Fusco and MacDonald located a Glock 19 bearing serial number BNYT212, underneath a bed (the basement was subdivided into numerous living quarters with numerous beds). Specifically, SAs Fusco and MacDonald located the gun under the mattress, between the mattress and the box springs.  The gun did not have a bullet in the chamber, however there was a loaded magazine inside of the weapon. During the interview, XAYADETH had stated that there was a gun in his room, underneath the bed, and that the gun had a loaded magazine inside of it, but no round was in the chamber.  Also located under the bed—underneath both the mattress and box spring—was a wallet containing an expired DOL license (XAYADSH293KE) bearing XAYADETH's name, photograph, and date of birth.

50.    Also, in the same area as the bed, SAs Fusco and MacDonald located:

- Two 38 special rounds inside of a black bag.

51.    In a nearby closet SAs Fusco and MacDonald located a digital scale, and body armor. Based off my knowledge training and experience, I know that narcotics traffickers frequently use digital scales in furtherance of their narcotics trafficking. Additionally, XAYADETH had stated to investigators, post-Miranda, that he shares a closet in the basement with one or more occupants of the residence.

52.    On the patio adjacent to the basement bedroom areas, Detective Branham located an empty 12 round magazine.

Complaint - 14

*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

53.    In the garage, I located five large vacuum-sealed bags containing bulk marijuana.

Interstate Nexus Examination of the Gun

54.    Alcohol Tobacco Firearms (ATF) Special Agent Catherine Cole is an interstate nexus expert who has received specialized training in identifying firearms and their place of manufacture.  SA Cole has examined photographs of the Glock 9mm caliber seized from XAYADETH's room and determined that the firearm was manufactured outside the State of Washington.  Therefore, the firearm must have traveled in interstate or foreign commerce before being possessed in the state of Washington.

## CONCLUSION

55.    Based on the foregoing facts, I respectfully submit there is probable cause to believe SANXAY XAYAHETH has committed the crime of Unlawful Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1) and Possession of a Controlled Substance with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B).

SHANE MOLZ, Complainant
Special Agent, HSI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

DATED this 7th day of September, 2023.

Honorable Brian A. Tsuchida
United States Magistrate Judge

Complaint - 15
*United States v. Sanxay Xayadeth*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970